Argued and submitted September 6, 1979,
affirmed January 22, 1980

# STATE OF OREGON,
*Respondent,*
*v.*
# DONALD EUGENE BISHOP,
*Petitioner.*

(No. C77-08-12166, CA 10219, SC 26032)

605 P2d 642

J. Marvin Kuhn, Deputy Public Defender, argued the cause for petitioner. With him on the petition and brief were Gary D. Babcock, Public Defender, and B. David Thomas, Certified Law Student, Salem.

Melinda L. Bruce, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

HOLMAN, J.

**HOLMAN, J.**

Defendant was convicted of burglary in the first degree. The conviction was affirmed by the Court of Appeals, 37 Or App 909, 587 P2d 1057 (1978). This court allowed review.

Four police officers went to the house of defendant's mother for the purpose of arresting defendant. They went there because it was his mother's home and an automobile thought to be defendant's was parked in front. Defendant was living with his mother but this was unknown to the police at the time. The police had knowledge that a warrant had issued for defendant's arrest and they claimed to have probable cause to arrest him for the burglary of which he was ultimately convicted in this case and which had no connection with the issuance of the warrant. One officer went to the rear of the dwelling and the three other officers went to the front door. Two of the officers who went to the door were in uniform. Defendant's wife answered the door and the police identified themselves as police officers and the one in plain clothes disclosed his badge. They asked if her husband was there and said they wished to speak to him. She told them that he was not there and stepped out on the porch to talk with them further. As she did so, the officer in plain clothes stepped behind her and through the doorway because he was aware that there was a man in the room behind her. This person was not her husband, but, as the officer was talking to this individual, he saw a door close which opened off of the room. The officer drew his revolver and moved into that room where he found defendant, who had just removed himself from the bathtub.

After being taken into custody, defendant soon thereafter confessed to the burglary in question. Defendant filed a motion to suppress the confession as being the fruit of an illegal arrest because, although the officers identified themselves, they failed to announce the purpose for their entry. The trial court

[351]

denied the motion, and, as stated previously, this ruling was affirmed by the Court of Appeals. This issue is the only one before this court as it was the sole basis for the appeal and the only matter urged in the petition for review to this court. Thus, there is no issue of the officers' right to enter—the only issue is their failure to announce their purpose before they did so.

ORS 133.235(5) and (6) provide as follows:

"(5)  In order to make an arrest, a peace officer may enter premises in which he has probable cause to believe the person to be arrested to be present.

"(6)  If after giving notice of his identity, authority and purpose, the officer is not admitted, he may enter the premises, and by a breaking, if necessary."

There is no doubt that the officers violated the provision of the statute requiring them to announce their purpose before entry. However, the statute says nothing concerning the consequences of this or any kind of a violation, and this court, in *State v. Valentine/Darroch,* 264 Or 54, 66-69, 504 P2d 84 (1972), *cert. denied,* 412 US 948, 93 S Ct 3001, 37 L Ed2d 1000 (1973), decided that in a search for the truth, a violation of a similar predecessor statute was not, in that case, of sufficiently serious consequence to justify the exclusion of otherwise competent evidence. The opinion did not say that the court would never exclude evidence if the circumstances were particularly aggravated or if violations of the statute became commonplace.

In *Valentine/Darroch,* an undercover agent left the defendant's apartment for the ostensible purpose of securing the money to pay for drugs which were present in defendant's apartment. Upon doing so, he left the the door slightly ajar and informed other officers who had a search warrant for the premises. These officers then opened the door without either knocking or announcing.

The present entry was considerably less aggravated than that in *Valentine/Darroch.* We, therefore, hold the motion to suppress was properly denied insofar as

the statutory prohibition is concerned. This does not mean that the statute need not be obeyed, but means only that the evidence is not suppressed. The statute could have been obeyed in this instance with little chance of danger or inconvenience to the police officers. If such disregard of the statute becomes prevalent, this court may well be convinced that suppression of the evidence is necessary to require compliance. We are reluctant to jeopardize the public's protection by suppression of otherwise competent evidence unless police officers, by their disregard of statutory rules of conduct, make it necessary.

In *Valentine/Darroch* this court also held that the provisions of Article I, section 9, of the Oregon Constitution,[1] which is the Oregon counterpart of the Fourth Amendment to the United States Constitution, were not violated by the entry. We there discussed the reasons given for the knock and announce rule and concluded that they were two-fold: (1) to protect persons involved from harm from violence because of an unexplained entry; and (2) to protect the interest of householders in the privacy of their homes. At common law there was a third reason, and that was to prevent the destruction of property. We concluded "that an otherwise lawful search and seizure accomplished by an entry which was made without an announcement of presence and purpose is not an unreasonable search and seizure within the meaning of the Oregon Constitution." 264 Or at 65-66. Such being the case where there is neither an announcement of presence or purpose, there could be no violation where there was an announcement of presence but not of purpose.

---

[1]

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; and no warrant shall issue but upon probable cause, supported by oath, or affirmation, and particularly describing the place to be searched, and the person or thing to be seized."

While this court has the final say in the interpretation of the Oregon Constitution, it does not enjoy this position in relation to the Constitution of the United States and more particularly the Fourth Amendment thereto.[2] There is no doubt in this case that the entrance without an announcement of the purpose in doing so was an invasion of the rights of the privacy of those persons residing within the premises. We have very little authority to which we can refer concerning whether the entrance in the present case would be considered by the United States Supreme Court as one sufficiently unreasonable to offend against the Fourth Amendment.

The scope of the Fourth Amendment is currently defined in terms of the protection of an individual's expectation of privacy. The United States Supreme Court in *Ker v. California,* 374 US 23, 83 S Ct 1623, 10 L Ed2d 726 (1973), its most recent discussion of the Fourth Amendment in relation to a violation of the knock and announce rule, clearly indicated that the knock and announce rule is one of Fourth Amendment constitutional magnitude. In *Ker* the officers entered the apartment of the defendants without a warrant for the purpose of arresting one of them for the crime of the possession of marijuana. They secured a passkey from the manager of the apartment house and entered without either knocking or announcing. The entry was held not to be unreasonable by four members of the Court because the evidence might have been destroyed and the occupants might have been expecting the police. A fifth member thought the Fourth Amendment was not applicable. Four members of the Court dissented and thought the entry unreasonable. The

---

[2]

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

four members approving the entry said little concerning the reasons for the knock and announce rule but the dissenters recognized that danger to those concerned was a "compelling consideration." This is confusing because the danger to the persons involved is not a privacy consideration. In addition, the privacy involved is necessarily limited since the knock and announce rule comes into play only when the officers have the legal right to enter the premises. The right of the occupants of the premises which is protected by the rule is really their right to be warned that their privacy is about to be legally invaded. Even the dissenter in *Valentine/Darroch,* Justice O'Connell, who believed that the basis of the rule was privacy, had difficulty "in seeing the knock and announce rule as having constitutional proportions, * * *." 264 Or at 69.

It is our conclusion that the danger to persons in the present case was minimal. At the door were two uniformed policemen plus a third in plain clothes who displayed his police badge. This is not a situation in which unidentified persons enter. Where there is no doubt that the persons at the door are police, there is no need for the occupants to feel unduly threatened by their entry and, therefore, to offer resistance. If the occupants are of the desperate kind who, in any event, will offer resistance, the officers have already assured the probability of violent and dangerous resistance just by announcing that they are police officers. In most instances, while the announcement of the purpose of the entry is highly desirable in a civilized society, as long as police identify themselves we doubt that danger of injury to police or persons within is materially increased by failure to announce the purpose of the entry.

In *Miller v. United States,* 357 US 301, 78 S Ct 1190, 2 L Ed2d 1332 (1958), two ununiformed officers forced the door of defendant's apartment at 3:45 a.m. for the purpose of arresting him. The Court held the validity of the arrest was to be determined by the law of the

District of Columbia where the occurrence took place and that the knock and announce law of the District was similar to that set forth by 18 USC § 3109[3] which governed the execution of search warrants. It determined that because there was no announcement of purpose and likely no audible identification of them as police, the entry was unlawful. The resultant evidence which was found as the result of a search pursuant to defendant's arrest was suppressed. There was no mention in the opinion of the Fourth Amendment. The thrust of the opinion is invasion of privacy, but danger to the police is also mentioned.

In *Sabbath v. United States,* 391 US 585, 88 S Ct 1755, 20 L Ed2d 828 (1968), the officers entered through an unlocked door without knocking or announcing for the purpose of arresting the defendant. The Court invalidated the entry on the basis of a rule analogous to section 3109. 391 US at 588-589. There was no mention of the Fourth Amendment other than an oblique footnote concerning exceptions to "* * * any *possible* constitutional rule relating to announcement and entry [having] been recognized * * *" in *Ker.* 391 US 591 n8. (Emphasis added.)

We conclude that there is no basis for determining whether the United States Supreme Court would invalidate the entry in the present instance on the basis of the Fourth Amendment. Our conclusion, when left to our own analysis, is that in the absence of a substantial danger of violence, the privacy protection afforded by the rule is so momentary as not to rise to federal constitutional consequences. In *State v. Valentine/Darroch, supra,* 264 Or at 64-65, we held that before the illegal entry would violate the Fourth Amendment, both the purpose in the prevention of harm to persons

---

3

"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant."

and the protection of privacy must be offended in a particular case. As stated by Justice Traynor in *People v. Maddox,* 46 Cal 2d 301, 294 P2d 6, 9 (1956):

"* * * since the officer's right to invade defendant's privacy clearly appears, there is no compelling need for strict compliance with the requirement of section 844 [California's knock and announce statute] to protect basic constitutional guarantees."

The decision of the Court of Appeals is affirmed.