[No. 14238-8-III.   Division Three.   May 2, 1996.]
THE STATE OF WASHINGTON, *Respondent*, v. KEVIN LEON SCHIMPF, *Appellant*.

■■■■

■■■■

■■■■

*James Kane* of Spokane Public Defender's Office, for appellant.

*James R. Sweetser, Prosecuting Attorney*, and *Kevin M. Korsmo, Deputy*, for respondent.

■■■■

■■■■

THOMPSON, J. — Kevin Leon Schimpf appeals his conviction for possession of marijuana with intent to manufacture, RCW 69.50.401(a). He contends officers unlawfully failed to "knock and wait" before entering his fenced backyard as they executed an arrest warrant, and the trial court should have suppressed evidence seized from the backyard. We affirm the conviction.

Early in the morning of July 13, 1992, Deputies Eric Werner and Raymond Harding went to Mr. Schimpf's Spokane home to execute two misdemeanor warrants for Mr. Schimpf's arrest. Deputy Werner walked down the driveway so he could watch the rear door. Deputy Harding went toward the front door.

The backyard of the house was enclosed by a four– or five–foot–high fence. A fence gate, low enough for the deputy to see into the backyard, was attached to a corner of the house. Standing outside the gate, Deputy Werner saw a marijuana plant in a pot in the backyard. He saw dogs

in the yard, but no people. The deputy opened the unlocked gate, walked into the backyard, and seized the marijuana plant.

The gate was two feet, two inches from a window on the rear of the house, and ten feet, nine inches from a side window. Both windows were open, and the trial court found that a knock and verbal announcement by Deputy Werner at the gate would have been audible inside the house.

Mr. Schimpf was charged with possession of marijuana with intent to manufacture, RCW 69.50.401(a). He moved to suppress the evidence. After two separate evidentiary hearings, the trial court concluded that, while the backyard was the curtilage of Mr. Schimpf's home, the "knock and wait" rule did not apply to the deputy's entry through the unlocked gate. The court declined to suppress the evidence, and entered a guilty verdict on stipulated facts.

Mr. Schimpf contends on appeal that the trial court erred in declining to suppress evidence seized as a result of Deputy Werner's unannounced entry into the backyard of Mr. Schimpf's home. RCW 10.31.040 provides: "To make an arrest in criminal actions, the officer may break open any outer or inner door, or windows of a dwelling house or other building, or any other inclosure, if, after notice of his office and purpose, he be refused admittance."

This statute is a codification of the common law "knock and wait" rule, which requires that officers knock, announce their identity and purpose, and wait a reasonable period before entering premises without permission. *State v. Coyle*, 95 Wn.2d 1, 5–6, 621 P.2d 1256 (1980); *State v. Alldredge*, 73 Wn. App. 171, 174–78, 868 P.2d 183 (1994). Compliance with the common law rule is "among the factors to be considered in assessing the reasonableness of a search or seizure" under the Fourth Amendment. *Wilson v. Arkansas*, 514 U.S. 927, 115 S. Ct. 1914, 131 L. Ed. 2d 976 (1995); *see Coyle*, 95 Wn.2d at 6–7. The purposes of the rule and the statute are (1) to reduce the potential for

violence in an unannounced entry by police; (2) to prevent unnecessary damage to property; and (3) to protect occupants' privacy. *Coyle*, 95 Wn.2d at 12; *Alldredge*, 73 Wn. App. at 176–77. The remedy for violation of the rule or the statute is suppression of the evidence. *Coyle*, 95 Wn.2d at 14; *see State v. Hastings*, 119 Wn.2d 229, 236, 830 P.2d 658 (1992); *but see Wilson*, 115 S. Ct. at 1919 n.4.

Like Washington, many other jurisdictions[1] have codified the "knock and wait" rule in various forms. *See Wilson*, 115 S. Ct. at 1917. However, it is unclear whether the precise contours of the constitutionally required "knock and wait" rule are identical to these statutory requirements. *See Wilson*, 115 S. Ct. at 1918 n.3. It thus is unclear whether the constitutional requirement applies to dwellings (the term the court in *Wilson* used), more generally to buildings, or (as RCW 10.31.040 provides) to "inclosures."

Mr. Schimpf argues Deputy Werner's unannounced entry through the backyard gate violated both RCW 10.31.040 and the Fourth Amendment.[2] He contends the backyard was "curtilage," which he argues is a protected area for the purpose of both constitutional and statutory[3] analysis. *See United States v. Dunn*, 480 U.S. 294, 301, 107 S. Ct. 1134, 1139–40, 94 L. Ed. 2d 326 (1987); *State v. Mierz*, 127 Wn.2d 460, 472 n.8, 901 P.2d 286 (1995); *but see State v. Rose*, 128 Wn.2d 388, 392–93, 909 P.2d 280 (1996) (unfenced front porch area "impliedly open to the public").

However, "[e]ven as to dwellings, it is of no conse-

---

[1] The federal statute provides: "The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute a search warrant, if, after notice of his authority and purpose, he is refused admittance or when necessary to liberate himself or a person aiding him in the execution of the warrant." 18 U.S.C. § 3109.

[2] Mr. Schimpf also argues the entry violated Const. art. I, § 7. However, he has not argued the state constitutional provision is more protective than the Fourth Amendment. *See State v. Gunwall*, 106 Wn.2d 54, 58, 720 P.2d 808, 76 A.L.R.4th 517 (1986).

[3] Arguably, a fenced area would be an "inclosure" as anticipated by RCW 10.31.040.

quence that the police failed to announce their authority and purpose prior to entry if no one was present therein at the time." 2 WAYNE R. LAFAVE, SEARCH AND SEIZURE § 4.8(b), at 605 (3d ed. 1996) (footnote omitted). *See Payne v. United States*, 508 F.2d 1391, 1393 (5th Cir.), *cert. denied*, 423 U.S. 933 (1975); *State v. Buck*, 756 P.2d 700, 702 (Utah 1988). Therefore, even if a fenced backyard is subject to the "knock and wait" rule, the absence of any person in Mr. Schimpf's backyard, which Deputy Werner could confirm from his vantage point at the gate, would have made an announcement at that point an "empty gesture." *State v. Iverson*, 364 N.W.2d 518, 527 (S.D. 1985).

A knock and announcement at the gate in these circumstances would serve none of the purposes of the rule and statute. Because no one was present in the backyard, there was little risk of violence. The unlocked gate permitted the deputy to enter the area without damage to property. And the deputy was able to look easily into the yard over the relatively low gate and fence, suggesting there were no significant, legitimate privacy interests involved.

Courts in other jurisdictions have reached the same conclusion in similar circumstances. In *People v. Mayer*, 188 Cal. App. 3d 1101, 233 Cal. Rptr. 832 (1987), officers executed a search warrant at a residence they knew to be fortified and guarded by cameras. They approached the residence from the rear, climbed over a fence, and entered through a sliding glass door off the back patio. 233 Cal. Rptr. at 836–37. The court rejected an argument that the officers' entry into the backyard violated California's statutory "knock–notice" requirement,[4] in part because "there was no one in the back yard at the time to receive the notice." 233 Cal. Rptr. at 838.

And, in *State v. Sanchez*, 128 Ariz. 525, 627 P.2d 676 (1981), officers executed a search warrant at a house sur-

---

[4]"The officer may break open any outer or inner door or window of a house, or any part of a house, or anything therein, to execute the warrant, if, after notice of his authority and purpose, he is refused admittance." Cal. Penal Code § 1531.

rounded by a six–foot chain–link fence with locked gates; officers cut the lock and entered the yard without identifying themselves or announcing their purpose. The court held the entry did not violate Arizona's announcement provision,[5] because application in that circumstance would not serve the three purposes of the statute. 627 P.2d at 679. The court observed: "[I]t was apparent to the officers that the yard within the chain link fence and outside the house was vacant." 627 P.2d at 680.

Mr. Schimpf argues *Sanchez* is distinguishable, because the court in that case observed "a bullhorn or some other voice amplification device would have been necessary to enable occupants of the house to hear the officers' announcement at the gates." 627 P.2d at 680. Here, by contrast, the trial court found a verbal announcement at the gate would have been audible inside the Schimpfs' residence. This distinction has no bearing on the analysis here. The *Sanchez* court's discussion was related to whether an announcement by the officers would have prevented the destruction of the gate lock; in this case, the gate was unlocked, and Deputy Werner's entry did not destroy any property. Also, the fact that an announcement could have been heard in a separate, occupied area does not detract from the fact that the area the deputy actually entered was unoccupied. Certainly before entering the residence itself, the deputies were required to comply with the constitutional and statutory "knock and wait" requirements.

Deputy Werner's entry into the unoccupied, fenced backyard area of Mr. Schimpf's residence did not violate the "knock and wait" rule or statute. There was no error.

The conviction is affirmed.

---

[5] "An officer may break into a building, premises, or vehicle or any part thereof, to execute the warrant when:

"1. After notice of his authority and purpose, he receives no response within a reasonable time[; or]

"2. After notice of his authority and purpose, he is refused admittance." ARIZ. REV. STAT. § 13–3916(B).

Sweeney, C.J., and Schultheis, J., concur.

Review denied at 130 Wn.2d 1005 (1996).